## LIQUID CARBONIC CO. v. DILLEY.

(Court of Civil Appeals of Texas. Dallas.
June 29, 1912. Rehearing Denied
Oct. 12, 1912.)

1. MASTER AND SERVANT (§ 293*)—INJURIES—
INSTRUCTIONS—PROXIMATE CAUSE.

In an employé's action for personal injuries caused by the explosion of a solution tank, the court instructed, after defining "ordinary care," that it was defendant's duty to exercise such care in furnishing plaintiff with reasonably safe tanks, etc., and if plaintiff was directed to clean certain high-pressure coils, and, in the exercise of ordinary care he attempted to do so, and while so engaged a solution tank, used in connection with such work, exploded, and he was injured thereby, and said explosion was caused by defendant's failure to exercise ordinary care in furnishing a reasonably sufficient solution tank, or because defendant failed to exercise ordinary care in seeing that the high-pressure coil, to which the tank was connected, was reasonably safe, and a man of ordinary prudence would have acted as plaintiff did, the jury should find for plaintiff, and that if plaintiff failed to exercise ordinary care for his own safety, and such failure contributed to the injuries, the jury should find for defendant, even though it were guilty of negligence. Held that, while not in the usual form, the instruction sufficiently required that defendant's negligence should have approximately caused the injury, in order to authorize a recovery.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1161; Dec. Dig. § 293.*]

2. APPEAL AND ERROR (§ 742*) — BRIEFS —
COURT RULES.

Under Court 'of Civil Appeals rule 31 (142 S. W. xiii), providing that to each proposition under an assignment of error there shall be subjoined a brief statement of such proceedings contained in the record as will be necessary to explain and support the proposition with reference to the pages of the record, etc., a statement that "paragraph 4 of the general charge was as stated in the assignment (Tr. pp. 36, 37)," was insufficient as a statement.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

3. WITNESSES (§ 240*)—IMPEACHMENT—LEAD-
ING QUESTIONS.

In an action for personal injuries to an employé by the accumulation of gas in a high-pressure coil in a carbonic factory, witness was asked whether "engineer H., upon directing D. [plaintiff] to clean out the high-pressure coil told him that all the gas had been taken out of the coil," as plaintiff had testified, which question was excluded. Held that, even if the question had been leading, the answer should not have been excluded on that ground, where its

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

purpose was to directly impeach plaintiff as a witness.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 795, 837–839, 841–845, 849–851; Dec. Dig. § 240.*]

4. APPEAL AND ERROR (§ 1056*)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

Any error in excluding the question was not prejudicial to defendant, where both of the witnesses to whom the question was put testified that the engineer spoke to plaintiff about cleaning the coils, and said that the witness and another would help plaintiff, and that "that was all that was said."

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193; Dec. Dig. § 1056.*]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by M. L. Dilley against the Liquid Carbonic Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Lawther & Worsham, of Dallas, for appellant. Chas. F. Clint, of Dallas, for appellee.

TALBOT, J. This is an action instituted by the appellee against the appellant to recover damages for personal injuries received by him through the negligence of appellant's servants.

It is alleged, in substance, that on the 12th day of August, 1910, the defendant was operating in the city of Dallas, Tex., a factory for the purpose of generating, for use and sale, liquid carbonic acid gas; that in the operation of said factory defendant used an unsafe and insufficient oil in connection with its lubricators, and employed an insufficient number of employés and incompetent employés, and used discarded, old, and unsafe tanks and insufficient and unsafe methods in operating its machinery, and especially in cleansing and washing out its high-pressure coils; that, while each of the employés in the engineering department was supposed to attend to particular work, in point of fact, each of said employés was called upon to perform any and all manner of work, and without reference to their training or capacity, and with a full knowledge by appellant of their ignorance and incapacity to perform work in and about and upon machinery and gas, etc.; that in the operation of the machinery in said factory it was necessary to use a lubricator in connection with the cylinders connecting with what are known as high-pressure coils and pipes, through which the gas flows, from the source of its generation, to the stand or stands from which it was emptied into drums, etc., for market use; that because of the use of inferior oil the high-pressure coils became unclean and clogged up, and became intermixed with gas therein, and prevented the gas from fully and freely flowing, which caused it to freeze and become explosive and dangerous; that because of the use of said inferior oil in connection with said cylinders it became necessary from time to time, in order to use said high-pressure coils and machinery at all, and to keep the same from being dangerous, to cleanse the same, which was of itself very dangerous, especially if said cleansing was delayed until the high-pressure coils, or pipes, or drums, or other machinery became clogged; that what is called a "solution tank," containing the solution used in cleansing the high-pressure coils, and which was used on the morning of the 12th day of August, 1910, was a small, weak, defective, and insufficient tank for the purpose used; that it was unable to resist any pressure whatsoever of gas, whereas, in order to be safe and sufficient, it should have been able to resist at least 2,500 pounds pressure of gas; that defendant failed to exercise ordinary care in furnishing a reasonably safe solution tank to the appellee in doing the work required of him; that on said 12th day of August, 1910, the appellee was an employé in said factory, and while in the faithful discharge of his duties, and in the exercise of ordinary care, said defective solution tank in said factory exploded, and parts and pieces thereof were hurled upon and against his person and body in numerous and divers places, striking his forehead, neck, body, legs, below and above the knees, and hurling him through the air, and rendering him unconscious; that his body, through said explosion, was torn and mangled; that his left leg was blown to pieces; that his forehead was lacerated and bruised and gashed, and the sight of his left eye, in consequence thereof, partially destroyed; that the injuries thus caused necessitated an amputation of his left leg above the knee, and he was rendered a helpless cripple and permanently unable to labor and earn a livelihood, and since the infliction of said injuries he has continually suffered great mental anguish and physical pain, and will continue to so suffer throughout the remainder of his life. The defendant answered by general and special exceptions, general denial, assumed risk and contributory negligence on the part of the plaintiff, in that he carelessly failed to empty the high-pressure coils of gas before connecting the same with the solution tank, and before opening the valves. A trial was had May 26, 1911, and resulted in a verdict and judgment in favor of the plaintiff for the sum of $8,300, and the defendant appealed.

[1] By the first assignment of error, it is contended that, in order for the appellee to recover, it was necessary for the jury to find from the evidence, not only that the defendant was negligent, but that such negligence was the proximate cause of the explosion and consequent injury to the appellee, and that the court's charge failed to so instruct them. The proposition asserted is correct; but we do not think the court's charge is subject to the criticism that it authorized or permitted a verdict for plaintiff, if the ju-

ry should find that the defendant was guilty of negligence, without a further finding that such negligence was the proximate cause of the plaintiff's injuries. The charge, after defining "ordinary care," etc., and telling the jury that it was the duty of the defendant to exercise such care in furnishing plaintiff, as one of its employés, with reasonably sufficient, sound, and safe drums, tanks, coils, lubricators, oils, machinery, and other instrumentalities used in connection with the performance of plaintiff's duties, instructed the jury as follows: "If you believe from the evidence that on or about August 12, 1910, plaintiff was in the employ of the defendant, and was directed by Ed Hogan to wash and cleanse a certain high-pressure coil in its factory, and that in the exercise of ordinary care he attempted to wash out and cleanse said coil, and while so engaged a certain solution tank used in connection with said work exploded, and that he was thereby injured· as set forth in his first amended original petition, and that said explosion occurred because the defendant failed to exercise ordinary care in furnishing a reasonably sufficient, safe, and sound solution tank for said purpose, or because the defendant failed to exercise ordinary care in seeing that the high-pressure coil No. 1, to which said tank was connected at the time of its explosion, was reasonably free from gas and in a reasonably safe condition to be cleansed, and that a man of ordinary prudence, under the same or similar circumstances, would have acted as plaintiff did, then, in either of such events, you will find for the plaintiff and award him such damages as, under the evidence, he may be entitled to." They were further charged that "it was the duty of the plaintiff, upon the occasion of his being injured, if he was injured, to exercise ordinary care in and about his work for his own safety; and if you find, under the evidence, that he failed to use such care, and that such failure, if any, caused or contributed to cause the injuries which he complains of, then you will find for the defendant, even though you believe from the evidence that the defendant was guilty of negligence which contributed towards the injury." The charge complained of is not in the usual form; but its phraseology is such as to require the jury to believe, before they would be warranted in returning a verdict in favor of the plaintiff, not only that the defendant had been guilty of negligence which caused the explosion and injury to plaintiff, but also that such explosion and injury were proximately caused by such negligence. If, as the charge required, the jury believed the plaintiff was injured by the explosion of the solution tank, and such explosion occurred *because* the defendant failed to exercise ordinary care in furnishing a reasonably safe and sound solution tank, etc., then it follows necessarily that such failure or negligence was the proximate cause of plaintiff's injuries. Railway Co. v. Anglin, 45 Tex. Civ. App. 41, 99 S. W. 897. There is no probability, at least, that the appellant was injured by the form or construction of the charge.

Nor did the court err in charging the jury that it was "the duty of the defendant to exercise ordinary care in furnishing plaintiff with sufficient and competent help in connection with the discharge of his duties in said factory." The evidence was sufficient to raise an issue of negligence on the part of the defendant in this respect, which may have been the proximate cause of the accident, and the charge complained of was not error.

The third assignment of error, by what has been said in discussing the first, is disposed of adversely to appellant's contention

The fourth assignment points out no reversible error. The paragraph of the court's charge here complained of embodied substantially a correct proposition of law applicable to the facts, and sufficiently covered the issue sought to be submitted by appellant's special charge No. 6 to prevent any injury to appellant by reason of the refusal of the special charge. Besides, we are inclined to think the special charge is subject to the objection that it is upon the weight of the evidence. At all events, the refusal of said special charge, in view of the court's general charge upon the subject to which it related, does not constitute reversible error.

[2] The fifth assignment complains of the tenth paragraph of the court's charge, which relates to the doctrine of fellow servants. The proposition presented under this assignment is that "the charge was erroneous, in that it limited the fellow-servant doctrine to employés 'in the engineering department'; and in that the instruction as to fellow servants was so qualified with instructions to disregard the same, if the jury found that defendant contributed with fellow servants to the infliction of the injury, or if they found that, from what Hogan said, plaintiff had a right to believe that the high-pressure coil was free from gas, as to nullify what was said as to fellow servants. The charge was further erroneous, in that it directed the jury, in the event they found that defendant contributed, together with said fellow servant, to the infliction of the injury by failing to exercise ordinary care in furnishing to plaintiff a reasonably safe; sufficient, and sound solution tank, to find for the plaintiff, regardless as to whether such failure to exercise ordinary care directly and proximately caused the injury." This assignment is not briefed in accordance with the rules, and is therefore not entitled to consideration. Rule 31 (142 S. W. xiii) prescribes that to each proposition under an assignment "there shall be subjoined a brief statement, in substance,

of such proceedings, or part thereof, contained in the record, as will be necessary and sufficient to explain and support the proposition, with reference to the pages of the record," etc. The only statement accompanying this assignment is: "Paragraph 4 of the general charge was as stated in the assignment. (Tr. pp. 36, 37.)" But, however, if we were disposed to consider the assignment of error, we are not prepared to hold that the charge was materially erroneous.

[3] The plaintiff, while testifying in his own behalf, stated that Hogan, defendant's engineer, upon directing him to clean out the high-pressure coil, told him, in the presence of one Allison, that he (Hogan) had blown all the pressure off the high-pressure coil; that there was no gas in it. Thereafter the defendant put the said Allison and Hogan in succession upon the witness stand and asked each of them the following question: "Tell the jury whether or not Engineer Hogan, upon directing Dilley to clean out the high-pressure coil, told him that all the gas had been taken out of the coil; that all the pressure had been taken out of the coil?" To the question and answer the plaintiff objected, on the ground that the question was leading. The court sustained the objection and refused to permit either of said witnesses to answer the question, and this ruling is made the basis of appellant's eleventh assignment of error. The bill of exception states, in effect, that defendant expected to prove by each of said witnesses that its engineer, Hogan, did not, in directing the plaintiff to clean out the high-pressure coil, tell him (plaintiff) that all the gas had been taken out of the coil. Obviously the purpose of the testimony excluded was to contradict the plaintiff's testimony in an important particular, and we do not think the objection that the question was leading is well taken. We are inclined to the opinion that the question was not leading; but if it was the answer should not have been excluded for that reason. For the purpose of contradicting or impeaching the plaintiff, as a witness, we think it would have been proper to elicit from the witnesses Allison and Hogan, by a leading question, that no such statement as was imputed to him by the plaintiff was made to plaintiff by Hogan at the time he directed him to clean out the high-pressure coil.

[4] But, in view of the record before us, we think it must be held that no substantial injury resulted to the appellant from the court's ruling. It seems that both Hogan and Allison stated very fully all that was said by Hogan to plaintiff at the time plaintiff was directed to clean out the high-pressure coil. Allison said: "I remember Mr. Hogan speaking to Mr. Dilley about cleaning the coils, and told him to go ahead and connect the steel tank, and to wash and

clean it out; that it was ready to clean out. Mr. Dilley told Mr. Hogan that he did not know how to charge the tank, and he (Hogan) turned around to both of us and said, 'Shetland will help you.' Mr. Hogan told Mr. Dilley to charge the tank. Mr. Dilley said he did not know anything about charging the tank. He (Hogan) told him to go ahead and wash out the coils; that everything was ready to wash out. Mr. Dilley told him he didn't know how to charge the tank, and he turned around and told Mr. Dilley that Shetland would help him; he called me 'Shetland.' *That was all that was said.*" Again, in answer to the question, "Tell everything you heard Hogan tell Mr. Dilley?" Allison said: "As I remember, he (Hogan) came back from somewhere in the plant and says to me and Mr. Dilley— Mr. Dilley walked up behind him, or rather in front—and Mr. Hogan says to him: 'You go ahead and wash it out; everything is all right.' Then Mr. Dilley says to him he didn't know how to charge the tank, and turned around and says, 'Shetland will charge it for you.' That is everything that I heard said that I remember." Hogan, in answer to questions propounded to him on the subject of washing out the high-pressure coil, testified: "I found that there was nothing the matter with it, and told Mr. Dilley to go ahead and wash his coils; that the machine was all right. Mr. Dilley mentioned something about the tank, and I told him that Mr. Allison would charge it for him. That is all I recollect of having told Mr. Dilley, and I went back and told Mr. Allison to charge the tank, and left. I told Mr. Dilley that everything was all right, to go ahead and wash his coils. I found out there was nothing the matter with it and told Mr. Dilley to go ahead, and then I left. * * * There was bound to have been pressure in the coil that Mr. Dilley was to wash out; but I didn't let it out, because I was getting away from there, and thought Mr. Dilley would let it out if he was going to wash the coil. I didn't tell Mr. Dilley to let it out, because it was such a regular practice, when we shut down the compressor to do any work on there, to let the pressure out. * * * Mr. Dilley said he didn't know anything about that tank; he had never charged a tank to my knowledge. Mr. Allison was the man I told to charge it. We had worked on No. 2 high-pressure coil the day before, and I started the No. 2 compressor that morning—the one they had shut down that night—and I shut down the one that I wanted him to clean. I told him that everything was all right. * * * Then he told me what I have stated, and then I told Allison to charge it. That is all I know about it."

The thirteenth assignment of error complains that the trial court erred in refusing to grant it a new trial because of cer-

tain remarks made by counsel for plaintiff in argument to the jury. The language used, as shown by the bill of exception, was clearly improper, but does not, in our opinion, require a reversal of the case. The court promptly sustained objections to the remarks of counsel, and instructed the jury orally, and, in so far, it seems, as requested by appellant, in writing, not to consider the objectionable remarks of counsel. Besides, there is nothing in the record to indicate that the jury was in the least influenced by the remarks of counsel to the prejudice of the appellant. The evidence is amply sufficient to justify the conclusion that appellee was injured through the negligence of appellant, and that the verdict is not at all excessive. On the contrary, the evidence would have supported a verdict for a much larger amount.

Believing that none of the assignments, all of which have been carefully considered, point out reversible error, that the verdict of the jury is sustained by the evidence, and that the justice of the case has been reached, the judgment of the court below is affirmed.

Affirmed.